17-1059-cv
*Vista Outdoor Inc. v. Reeves Family Trust, et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of February, two thousand eighteen.

PRESENT:
　　　　JOHN M. WALKER, JR.,
　　　　GERARD E. LYNCH,
　　　　DENNY CHIN,
　　　　　　*Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

VISTA OUTDOOR INC.,
　　　　　　*Plaintiff-Counter-Defendant-Appellee*,

　　　　　　　　　　v.　　　　　　　　　　　　　　17-1059-cv

REEVES FAMILY TRUST, MICHELLE
WILKENS, JEREMY WILKENS, KYLE
REEVES,
　　　　　　*Defendants-Counter-Claimants-Appellants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLEE:  ADAM H. OFFENHARTZ (James L. Hallowell, Jonathan D. Fortney, William J. Moccia, *on the brief*), Gibson, Dunn & Crutcher LLP, New York, New York.

FOR DEFENDANT-APPELLANT:  ALAN A. GREENBERG (Thomas C. Rickeman, Claire-Lise Y. Kutlay, *on the brief*), Greenberg Gross LLP, Costa Mesa, California, and Jonathan A. Harris, *on the brief*, Harris, St. Laurent & Chaudhry LLP, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order and final judgment of the district court is **AFFIRMED.**

Defendants-counter-claimants-appellants Reeves Family Trust, Michelle Wilkens, Jeremy Wilkens, and Kyle Reeves[1] (collectively the "Sellers") appeal from the district court's order and final judgment entered March 13, 2017, awarding plaintiff-counter-defendant-appellee Vista Outdoor Inc. ("Vista") damages on its claims for, *inter alia*, breach of contract, tortious interference with contract, and breach of the implied

---

1    Although not a signatory to the relevant purchase agreement, Kyle Reeves was a de facto Seller, who controlled the actions of the Reeves Family Trust, which was a signatory to the Purchase Agreement, through his mother who was the Trust's sole trustee.

covenant of good faith and fair dealing and dismissing the Sellers' claims. The district court explained its reasoning in the March 13, 2017, order and judgment as well as in its opinion and order entered February 13, 2017, granting partial judgment in favor of Vista, and its memorandum and order entered March 10, 2017, denying the Sellers' motion for reconsideration. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Construed in the light most favorable to the Sellers, the facts are summarized as follows: Vista, a designer, manufacturer, and marketer of outdoor sports and recreation products, purchased Jimmy Styks, a designer, manufacturer, and marketer of stand-up paddleboards, in July 2015. Jimmy Styks was founded by Kyle Reeves and Jeremy Wilkens in 2009 and was owned, prior to the Vista acquisition, by Jeremy Wilkens, Wilkens's wife Michelle Wilkens, and the Reeves Family Trust, an irrevocable trust whose sole trustee is Reeves's mother. In exchange for ownership of Jimmy Styks, Vista agreed to pay the Sellers $40 million at the closing of the deal and up to an additional $40 million contingent on Jimmy Styks meeting or exceeding certain gross profit benchmarks annually over the three years succeeding the acquisition (the "earn-out"). This was laid out in a document the parties refer to as the Purchase Agreement. For the period from July 1, 2015, to July 3, 2016, under the Purchase

3

Agreement, the Sellers would receive a minimum earn-out of $1 million if gross profits equaled a certain threshold with the potential payout increasing incrementally to a maximum of $10 million if profits equaled or exceeded a higher specified threshold.

After Vista's acquisition of Jimmy Styks, both Jeremy Wilkens and Reeves accepted employment with Vista to help Jimmy Styks integrate into Vista's business.[2] As July 3, 2016, approached, Jeremy Wilkens and Reeves became increasingly concerned that gross profits would not reach the threshold necessary to trigger their earn-out. Thus. they concocted a plan to inflate Jimmy Styks' gross profits. Beginning around March 8, 2016, they started, in their capacity as Vista employees, the process of acquiring, on behalf of Vista, one million Jimmy Styks branded stickers from a Chinese manufacturer. They planned to buy the stickers for Vista using Vista funds, then place the stickers for sale on the Jimmy Styks website, and then purchase all the stickers in their personal capacity, using their own funds, to inflate Jimmy Styks's gross profit for the 2016 earn-out period, just days before the deadline.

On May 26, 2016, after the stickers were delivered into Jimmy Styks's possession, Reeves, Jeremy Wilkens, and Michelle Wilkens each placed a small order of

---

2      As Reeves is a Canadian citizen, he was hired as an independent contractor rather than an employee.

4

stickers, using their personal funds. Then, several days before the end of the earn-out period, on June 22, 2016, the Sellers placed an order for nine hundred thousand Jimmy Styks stickers at $3.99 or $4.99 a piece, a price they had set themselves, for a total of $4 million worth of stickers. The Sellers, excluding the Reeves Family Trust which had not authorized the transaction, admit that they attempted to purchase the stickers to trigger their 2016 earn-out. If they had succeeded, because of the way the Purchase Agreement structured the earn-out, they would have received $10 million for their investment of $4 million.

When Vista executives learned of the Sellers' order of stickers, they blocked the transaction and terminated Reeves and Jeremy Wilkens from their positions. On July 19, 2016, Vista sued the Sellers. Vista asserted claims of breach of contract, tortious interference with contract, and breach of the implied covenant of good faith and fair dealing, and requested a declaratory judgment. The Sellers responded with counterclaims of their own -- for breach of contract, breach of the implied covenant of good faith and fair dealing, and claims based on their termination.

As noted above, the district court granted summary judgment for Vista and denied the Sellers' motion for reconsideration. On March 13, 2017, the district court entered its order and final judgment awarding Vista a total of $126,642 plus interest.

On appeal, the Sellers do not dispute the core factual findings of the district court, but rather argue that they were within their legal rights to procure one million stickers on behalf of Vista in their capacity as Vista employees, and then purchase the stickers from Vista using personal funds for $4 million, for the admitted purpose of triggering the earn-out of $10 million, netting themselves a profit of approximately $6 million in the process.

We review a district court's grant of summary judgment *de novo*. *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 103 (2d Cir. 2010). We "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016). We review the denial of a motion for reconsideration for abuse of discretion. *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Id.* (citation and internal quotation marks omitted).

The Sellers first argue that it was error for the district court to grant Vista summary judgment on its claim that the Sellers breached the implied covenant of good faith and fair dealing. We disagree. The district court correctly concluded that Jeremy

6

and Michelle Wilkens breached the implied covenant of good faith and fair dealing as a matter of law. Under New York law, "implicit in every contract is a covenant of good faith and fair dealing which encompasses any promises that a reasonable promisee would understand to be included." *N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318(N.Y. 1995) (citations omitted). Accordingly, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 817 (2d Cir. 2014) (citation and internal quotation marks omitted). The Sellers do not dispute the facts, but argue essentially that nothing in the Purchase Agreement prohibited them from personally purchasing approximately one million stickers from Jimmy Styks to boost gross profits to trigger the earn-out. The goal of the earn-out was to reflect the full value of Jimmy Styks at the time of acquisition and to compensate the Sellers if the business was more valuable than it was anticipated to be at the time of acquisition. To the extent the Sellers argue that the earn-out served some alternate purpose, such as creating an incentive to the Sellers to continue growing the acquired company in their role as employees, they have presented no evidence to support that assertion. In any event, even if that were the purpose of the earn-out, Vista's rights would still be

7

undermined by the Sellers' attempted sticker purchase, because that purchase would not reflect organic growth through potentially replicable sales.[3]

Though Michelle Wilkens did not work for Vista and did not place the ultimate sticker order herself, her collusion with Jeremy Wilkens and Reeves to buy the earn-out breached the implied covenant of good faith and fair dealing.[4] As Vista's request for declaratory relief simply sought a declaration that the Sellers breached the implied covenant of good faith and fair dealing, we also affirm the district court's decision to grant such relief.

The Sellers respond that even if they did breach the implied covenant of good faith and fair dealing, their actions did not result in any damages. *See Berley Indus., Inc. v. City of New York*, 45 N.Y.2d 683, 686 (N.Y. 1978). They argue that the purchase price of the stickers they acquired for Vista (over $60,000) cannot be

---

3       The Sellers argue that the Purchase Agreement expressly ties the earn-out to their achieving the target profits as measured by GAAP, that GAAP would count the net proceeds from the sticker sale as profit, and that the covenant of good faith cannot trump the accounting rules specified in the contract. But the specification of an accounting method does not mean that any transaction producing results that would be counted as profit using that method is legitimate under the contract. More specifically, it does not authorize the Sellers to engage in a self-dealing artificial transaction contrived entirely to exchange a $4 million payment that had no relevance to the performance of Jimmy Styks as a company or the Sellers as managers for a $10 million return payment, thereby making a $6 million personal profit at Vista's expense.

4       The Sellers also argue that Vista breached the implied covenant of good faith and fair dealing by blocking their sticker purchase. We disagree. Vista had strong reasons to block the sticker purchase, including that the purchase would have violated Vista's code of business ethics.

8

considered damages because Vista initially approved the sticker purchase and is still in possession of the stickers. Though Vista did approve the sticker purchase, it did not know about the scheme motivating the purchase and thus did not knowingly ratify the purchase. *See Holm v. C.M.P. Sheet Metal, Inc.*, 455 N.Y.S.2d 429, 432 (4th Dep't. 1982). Moreover, since the time of the purchase the stickers have become "worthless" to Vista and are not salable.[5] Accordingly, the district court did not err as a matter of law in assessing damages in the amount of the sticker purchase to Vista.

The Sellers next argue that the district court erroneously concluded that Kyle Reeves tortiously interfered with the Purchase Agreement. Again, we disagree. It is undisputed that Reeves was a principal engineer of the sticker scheme and encouraged the Wilkenses to join the scheme. Indeed, Reeves ordered the stickers using his authority as an employee of Vista and made them available for purchase on the Jimmy Styks website. As the sticker scheme breached the implied covenant of good faith and fair dealing, the district court did not err in granting summary judgment holding that Reeves's inducement of these actions, encouraging and motivating the breach, constituted tortious interference.

---

5      The Sellers argue that issues of fact remain about the residual value of the stickers. But Vista offered evidence that it had written off the entire cost of the stickers because they could not be sold and the Sellers offered no evidence at all as to their potential value.

9

Lastly, the Sellers contest the district court's holding that they breached Section 2.5 of the Purchase Agreement by failing to pay a portion of the amount owed. Section 2.5 of the Purchase Agreement required the parties to reconcile Jimmy Styks's estimated pre-closing balance sheet with its balance sheet at closing. Pursuant to this arrangement, the Reeves Family Trust and the Wilkenses owed Vista $132,284, but only paid half of that. Vista first delivered to the Sellers a closing balance sheet, which indicated the amount due within sixty days of closing, as called for by the Purchase Agreement, and then provided a revised estimate on September 25, 2015. Jeremy and Michelle Wilkens paid half of what was due: $66,142. It is undisputed, however, that the Reeves Family Trust never paid the remainder.

The Sellers raise two arguments in their defense. First, they argue that Vista is equitably estopped from collecting the remaining balance from Jeremy and Michelle Wilkens because Vista told them by e-mail that they only had to pay half. This argument is meritless. By paying half the outstanding balance, Jeremy and Michelle Wilkens reduced their liability but did not shield themselves from having to satisfy their contractual obligations. Second, the Sellers contend that Vista failed to notify the Reeves Family Trust of its outstanding obligation, waiving any obligation to pay under the Purchase Agreement's notice requirement. Though the Reeves Family Trust was

10

not directly sent the revised estimate by Vista, it received notice of the new calculations through Mr. Wilkens and it does not contend that it was prejudiced. *See Fortune Limousine Serv., Inc., v. Nextel Commc'ns*, 826 N.Y.S.2d 392, 395 (1st Dep't 2006) (Under New York law, "strict compliance with contractual notice provisions need not be enforced where the adversary party does not claim the absence of actual notice or prejudice by the deviation."). Accordingly, we affirm the district court's finding that the Sellers are liable for the remainder of the amount due under the Purchase Agreement.

. . .

We have considered the Sellers' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11